[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
ACCELERATED
 OPINION
In this accelerated calendar case, plaintiff-appellant, Joseph P. Kraska, appeals a judgment of the Portage County Court of Common Pleas, Domestic Relations Division, granting a motion to increase spousal support filed by defendant-appellee, Kathleen Kraska.
The parties were married in September 1968. They had two children: Joseph, who was born on July 5, 1974, and Holley, who was born on November 2, 1978. In the final years of the marriage, appellee was diagnosed with a dissociative disorder and a post-traumatic stress disorder and, as a result of her disability, began receiving disability benefits from the Social Security Administration in June 1992. Appellant completed medical school and one year of his residency during the marriage.
In March 1993, appellant filed for divorce. During the pendency of the divorce, custody of Holley, who was still unemancipated, was granted to appellee, and appellant was ordered to pay temporary support to appellee, $491.86 monthly for child support and $250 monthly for spousal support. Both the child and spousal support were later modified to $404.72 and $345, respectively. At the time of the divorce proceedings the marital standard of living was approximately $30,000.
In April 1994, the parties executed a separation agreement which was incorporated into a divorce decree. In the separation agreement, all issues relating to the divorce were resolved, including a division of the marital property. Custody of Holley remained with appellee, and appellant was ordered to pay child support in the amount of $404.72 monthly and spousal support in the amount of $600 monthly. The spousal support award would "end only upon the death or remarriage of the wife." The parties also agreed to the following:
 "The parties hereby acknowledge that the wife's [appellee's] need for spousal support is greater than the husband's [appellant's] present ability to pay, and that it is anticipated that the husband's earning ability will substantially increase in the future, partially due to the wife's contribution to the obtaining of the husband's professional license. The parties further acknowledge that the wife will lose substantial income in June, 1997 when it is anticipated that the minor child in her custody will graduate from high school. In consideration of these factors, neither party shall * * * seek any modification in the level of spousal support until such time as [the wife] is no longer eligible to collect child support for the minor child. The parties further agree that the recognized need of the wife and anticipated loss of child support shall be deemed to constitute a change of circumstances, giving rise to the need for a modification of spousal support at that point in time. Upon agreement of the parties, the Court shall not retain jurisdiction over the issue of the duration of spousal support, but shall retain jurisdiction to amend the amount of spousal support herein, from time to time."
In April 1997, a few months before Holley's graduation from high school, appellee filed a motion to increase spousal support, as contemplated by the parties when they entered into the separation agreement. At that time, appellant was earning approximately $120,000 annually, just three years after the termination of the twenty-five year marriage. After a lengthy hearing, the court granted appellee's motion and increased the award from $600 to $1,750 per month, beginning June 1, 1997.
Appellant filed a motion for a new trial, which the court denied. He also filed a notice of appeal from the judgment increasing his spousal support obligation. He raises five assignments of error:
 "[1.] The trial court erred, to the prejudice of plaintiff, by not allowing plaintiff to present evidence concerning his income during the marriage.
 "[2.] The court erred to the prejudice of plaintiff, by increasing spousal support for defendant.
 "[3.] The court erred, to the prejudice of plaintiff, when it overestimated the income of plaintiff and the expenses of defendant.
 "[4.] The court erred to the prejudice of plaintiff by determining defendant could not work.
 "[5.] The court erred, to the prejudice of plaintiff, by not evaluating the parties assets."
Appellant first challenges the trial court's refusal to allow him to present evidence of the marital standard of living. He claims the court prohibited him from giving testimony and presenting evidence as to his income during the marriage, contrary to R.C. 3105.18(C)(1).
The trial court found that the parties' standard of living during the marriage was approximately $30,000. Appellant argues he should have been given the opportunity to present evidence that the marital standard of living was $30,000. Appellant's argument is unfounded. Additionally, a review of the hearing transcript reveals no rebuffed attempt of appellant to present this evidence. But even assuming the court refused to allow appellant the opportunity to present evidence of the marital standard of living, we fail to see how he was harmed by the court's actions. The assignment of error is without merit.
For his second assignment of error, appellant maintains the trial court erred in increasing his spousal support obligation. He claims appellee did not demonstrate she had an increased need.
Our review of this assignment of error is limited to a determination of whether the trial court abused its discretion in increasing the award under the particular facts and circumstances of this case. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,218; Lee v. Lee (1983), 10 Ohio App.3d 113, 114. We may only reverse the decision if it is arbitrary, unconscionable, or unreasonable. Blakemore.
The general rule relating to modification of spousal support is that modification is only proper where there is a substantial change in circumstances. Carnahan v. Carnahan (1997), 118 Ohio App.3d 393,397; Leighner v. Leighner (1986), 33 Ohio App.3d 214,215. If the court finds a substantial change, it must consider whether a modification in support is necessary. Carnahan,118 Ohio App.3d at 398; Bingham v. Bingham (1983), 9 Ohio App.3d 191,193. In doing so, the court is to compare the obligor's ability to pay with the obligee's need for support. Smedley v. Smedley
(Sept. 27, 1995), Montgomery App. No. 15017, unreported, 1995 Ohio App. LEXIS 4774. Need is generally defined as the standard of living established during the marriage, not necessarily the bare minimum for survival. Leighner, 33 Ohio App.3d at 216. See, also, Wolfe v. Wolfe (1976), 46 Ohio St.2d 399, 414. These determinations are guided by the factors in R.C. 3105.18(C)(1): the income of the parties, the earning abilities of the parties, the ages and health of the parties, the parties' retirement benefits, the duration of the marriage, the appropriateness of the parties to seek employment outside the home, the marital standard of living, the education of the parties, the assets and liabilities of the parties, the contribution of either party to the other's education, the cost of education of the party seeking support, the tax consequences of a spousal support award, the lost income that results from the parties' marital responsibilities, and any other factor the court deems relevant. Griffith v.Griffith (June 17, 1994), Geauga App. No. 93-G-1778, unreported.
When dealing with a request to increase spousal support, an additional set of rules comes into play. Generally, an increase in the spousal support obligor's income does not automatically translate into an increase in the support order unless the obligor's income at the time of the prior order was insufficient to support the obligee at the standard of living established during the marriage. Gross v. Gross (1990), 64 Ohio App.3d 815,819; Carnahan, 118 Ohio App.3d at 398; Leighner,33 Ohio App.3d at 216;. Again, the court must look to the factors in R.C.3105.18(C)(1), Bingham, supra and King v. Kastelic (June 1, 1994), Summit App. No. 15998, unreported, 1994 Ohio App. LEXIS 2415, including subsection (j) — the contribution of either party tothe other's education.
In Lira v. Lira (1983), 12 Ohio App.3d 69, the parties had been married for ten years, during which time the husband had completed medical school and his internship. At the time of their divorce, the parties' marital standard of living was $15,000, and the court ordered the husband to pay $50 per week in child support and $250 per month in spousal support. In making this award, the court recognized that the husband's income would increase greatly over the coming years and reserved jurisdiction to modify spousal support for periodic review. As anticipated by the court, the husband's income increased to almost $100,000 in the three years after the divorce. The wife requested an increase in the spousal support award, and the trial court granted her request, increasing the amount of spousal support to $1,000 per month due to the wife's contribution to the husband's education during the marriage. On appeal, the Eighth Appellate District found no abuse of discretion.
In Labedz v. Labedz (Dec. 30, 1997), Mahoning App. No. 96 C.A. 65, unreported, 1997 Ohio App. LEXIS 6072, the parties had been married twenty-six years. They entered into a separation agreement wherein they agreed that the wife had a need for spousal support, in addition to child support. However, they also agreed that, because the husband had a "cash flow problem," only child support would be awarded. Once the child became emancipated, the spousal support issue would be revisited and the husband would be ordered to pay. After the child was emancipated, the wife requested spousal support in accordance with the parties' separation agreement. The court awarded the wife spousal support in the amount of $400 per month. On appeal, the Seventh Appellate District found no abuse of discretion.
This case is similar to Lira and Labedz. The parties were married for approximately twenty-five years. During the marriage, appellant completed medical school and one year of his residency. Appellee testified that she paid for appellant's medical school tuition, and the parties stipulated that appellee contributed to the procurement of appellant's medical degree and license. At the time of the divorce, the parties agreed that appellee was in need of spousal support in an amount greater than appellant's ability to pay. They also agreed that the issue would be revisited when Holley became emancipated because, at that time, appellee's income would decrease. The increase in spousal support was clearly contemplated by the parties at the time they entered into the separation agreement. Appellant cannot now complain about the fact of a spousal support increase when he agreed to the need for an increase in the separation agreement.
Appellant urges us to reverse the trial court's judgment because appellee is not entitled to share in his increased income without a showing of increased need. He also claims the marital standard of living is the ruler by which support is measured. Although this is the general rule, it is not necessarily dispositive in this case. Again, the parties agreed that appellee's needs were greater than appellant's resources at the time of the divorce. Appellee's needs, although they may not have increased and may remain essentially constant in the future, have not been adequately met in the past and will not be met in the future because the child support payment has been terminated. More importantly, appellee contributed to appellant's entrance into the medical field during their twenty-five year marriage. R.C.3105.18(C)(1)(j) requires the court to consider the contribution of one party to the other's education. Gebhart v. Gebhart (1984),14 Ohio App.3d 107. See, also, Stevens v. Stevens (1986), 23 Ohio St.3d 115
(holding it is an abuse of discretion not to consider the future value of a degree in establishing spousal support). Appellee should be permitted to partake of the fruits of their collective effort to obtain appellant's medical license. Lira.
Appellee, prior to Holley's emancipation, received $404.72 per month in child support, $600 per month in spousal support, $579 per month in social security disability for herself, and $311 per month from the Social Security Administration for Holley. She no longer receives child support from appellant or the Social Security Administration due to Holley's emancipation. Her expenses, as evidenced by the record, are approximately $2,500 per month. Even the increased spousal support of $1,750, plus her disability benefits of $579, are not enough to meet appellee's monthly expenses.
Appellant, on the other hand, receives a net monthly income of over $6,000, an income made possible by appellee's contribution to the procurement of appellant's medical degree and license. He has five cars, four of which have liens, a boat with a lien, and membership dues for a country club. He also gives his two emancipated children money on a regular basis without legal obligation to do so; he averages approximately $1,000 per month. He claims these expenses, in addition to his mortgage and other monthly expenses, make it impossible for him to meet this new spousal support obligation — approximately $750 more per month. The court found appellant's testimony incredible, as it was permitted to do, and refused to recognize expenses for all five cars; he only permitted appellant to claim one car (or 20% of the total car expense). The court concluded, in accordance with the parties' agreement and R.C. 3105.18(C)(1)(j), that an increase in spousal support was warranted under these facts and granted a significant increase to appellee.
Our review of the record and the facts of the case lead us to conclude the trial court did not abuse its discretion in increasing appellant's spousal support obligation.
The second assignment of error lacks merit.
Appellant challenges the trial court's findings regarding his income and appellee's expenses in his third assignment of error.
He first claims the trial court overestimated his annual income by $10,000. The evidence showed that appellant's annual income was, at most, $120,000. The trial court found appellant's annual income to be $130,000. This was error, but appellant has neglected to explain, and we fail to perceive, how this error harmed him. The court did not expressly base its calculation of support on the $130,000 figure, but appeared to arrive at the support figure by looking at appellant's net income of $6,000 per month and appellee's need of approximately $2,500 compared to her income. Thus, the error is harmless.
Next, appellant claims the trial court erroneously overestimated appellee's monthly expenses. He avers the evidence showed appellee's mortgage payment was $317 per month, not $400 per month as appellee noted on her expense statement. He also claims appellee did not have $136 per month in dental expenses, nor did she have $500 per month in psychiatric expenses. The evidence did in fact show appellee's mortgage to be $317 per month and the trial court acknowledged that at the hearing. She also testified that a friend paid for extensive dental work and she agreed to repay the friend $136 per month until that amount was paid off. Regarding the $500 per month in psychiatric expenses, appellee testified to this expense at the modification hearing. Appellant claims that, after the modification order was filed, appellee admitted her payments were only $12.50 per month. Taking this assertion as true, it does not provide grounds to reverse the trial court's modification order. Rather, it provides grounds for a modification of the existing order upon a duly filed motion.
The trial court reviewed appellee's statement of expenses ($2,618), evidence was adduced at the hearing regarding the expenses, and appellant's attorney was able to cross-examine appellee regarding the expenses. Ultimately, the court concluded appellant's expenses were approximately $2,500. This figure is supported by the evidence, and the trial court did not err in this regard.
The third assignment of error lacks merit.
For his fourth assignment of error, appellant contends the trial court erred in concluding appellee was unable to work without obtaining the opinion of a medical expert. He claims the trial court cannot merely rely upon the testimony of appellee that she suffers from a disability and is unable to work. We disagree.
The Eighth Appellate District has held that "* * * it is not necessary for a party to present expert medical testimony substantiating certain medical problems where the injured party testifies and is subject to thorough cross-examination." Gulliav. Gullia (1994), 93 Ohio App.3d 653, 662. See, also, Ellman v.Ellman (Sept. 27, 1996), Greene App. No. 95 CA 015, unreported, 1996 Ohio App. LEXIS 4267, and Denney v. Denney (Jan. 25, 1985), Montgomery App. No. 8667, unreported, 1985 Ohio App. LEXIS 5687. Appellant has not provided us, nor have we found, any contrary case law.
In this case, appellee testified that she has been diagnosed with a dissociative disorder and a post-traumatic stress disorder that require protracted treatment and that she is unable to work as a result of her disabilities. Evidence was also presented that the Social Security Administration has approved her disabilities for payment. Appellant's attorney cross-examined her about her illness and her therapy. Appellant did not obtain an independent medical expert or in any way attempt to independently disprove appellee's testimony regarding her disability or her inability to work.
The trial court found that appellee "is still disabled [and] that the prospects of her employment are slim * * *." Although the court could not conclude appellee suffered from a medically diagnosed case of dissociative disorder or post-traumatic stress disorder, it could properly conclude, based on appellee's testimony alone, that she was unable to work and her prospects for employment were bleak. Milam v. Milam (Oct. 19, 1994), Greene App. No. 94-CA-23, unreported, 1994 WL 579722.
The fourth assignment of error is without merit.
Appellant claims in his fifth assignment of error that the trial court did not consider the parties' assets as required by R.C. 3105.18(C)(1)(i). When a party does not request findings of fact and conclusions of law, it is presumed, absent evidence or statements from the court to the contrary, that the trial court considered all the relevant factors enumerated in R.C.3105.18(C)(1) when awarding spousal support. Carman v. Carman
(1996), 109 Ohio App.3d 698, 703. The record reveals the court received evidence on the parties current assets. In fact, the court stated, "I want to know what [appellee's] current assets are * * *. I want to know what she has now, what her expenses are, the same sort of thing I need to know from [appellant]." Appellant, who did not request factual findings or legal conclusions, has not brought to our attention any indication that the court did not consider the assets of the parties when it decided to increase the spousal support obligation.
Although the order does not contain a specific recitation of all of the relevant factors in R.C. 3105.18(C)(1), we presume the court considered the relevant factors because appellant has not demonstrated otherwise.
The fifth assignment of error is overruled.
The judgment of the Portage County Court of Common Pleas, Domestic Relations Division, is affirmed. ______________________ JUDGE ROBERT A. NADER
FORD, P.J.,
O'NEILL, J., concur.